IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–02782–RM–KMT

KENNETH SHERWOOD,

    Plaintiff,

v.

BRT CORPORATION, d/b/a The Advantage Group, d/b/a Professional Affiliates Company,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on "Defendant's Motion for Summary Judgment." (Doc. No. 27, filed Sept. 16, 2013.) For the following reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

### FACTUAL BACKGROUND

The following facts are derived from Plaintiff's Complaint and Jury Demand (Doc. No. 1, filed Oct. 19, 2012 [Compl.]) and the parties' briefing with respect to this Recommendation.

Plaintiff owed a debt (the "Debt") to the City of Littleton ("Littleton), which went into default in 2011. (*See* Compl. ¶ 11.) On September 29, 2011, Plaintiff received a written communication from Littleton stating that the balance of the Debt was $561.00 and was 90 days past due. (Resp., Doc. No. 36, Ex. B at 6.)

Littleton subsequently hired Defendant BRT Corporation to collect the Debt. (Mot. Summ. J., Ex. A, Affidavit of Terri Trujillo, ¶ 2 [Trujillo Aff.].) On December 8, 2011, Defendant sent Plaintiff an initial statement asserting that the total balance due on the Debt was $609.81, which consisted of the $561.00 principal balance, as well as $48.81 in interest. (Resp., Ex. D.) The $609.81 balance included in this December 8, 2011 statement differed from Littleton's September 29, 2011 statement, which featured an outstanding balance of $561.00 and did not state that any interest had accrued or was due on the Debt. Plaintiff maintains that Littleton had never collected or attempted to collect interest on the Debt. (*Id.*, Ex. B & C.)

In January 2012, Plaintiff entered into a payment agreement with Defendant. (Resp., Ex. A, Affidavit of Kenneth Sherwood, ¶¶ 2-3 [Sherwood Aff.].) There is no dispute that the payment agreement authorized BRT to issue checks for $25.00 on Plaintiff's checking account in January, February, and March 2012. (Trujillo Aff. ¶ 3; Sherwood Aff. ¶ 4.)

Defendant asserts that Plaintiff also authorized it to issue a check on his checking account in April 2012, in the amount of $538.99, which Defendant maintains was the remaining balance on the Debt at that time. (Trujillo Aff. ¶ 3.) Plaintiff asserts he did not authorize Defendant to issue a check on his account for $538.99 and, in fact, never authorized Defendant to issue a check on his account for more than $25.00. (Sherwood Aff. ¶¶ 5-6.) Instead, Plaintiff asserts that the payment agreement provided that he would pay $25.00 per month until the Debt was paid in full. (Compl. ¶ 13.)

Consistent with the parties' payment agreement, BRT sent Plaintiff letters in mid-January, mid-February, and mid-March 2012, notifying Plaintiff that it would deposit checks

drawn on his checking account for $25.00 each. (Mot. Summ. J., Ex. B, Affidavit of Tricia Young, ¶¶ 2, 4, 6 [Young Aff.], Ex. 1, 3, 5.) Those checks were then generated and negotiated by BRT on January 23, February 23, and March 23, 2012, respectively. (*Id.* ¶¶ 3, 5, 7; Ex. 2, 4, 6.)

BRT maintains that it sent Plaintiff a similar letter on April 16, 2012 informing him that, on April 23, 2012, it would deposit a check drawn on his checking accounting for $538.99. (*Id.* ¶ 8; Ex. 7.) However, Plaintiff asserts that he did not receive this letter, or any other notice of BRT's intent to withdraw $538.99, until *after* BRT attempted to withdraw that amount from his checking account. (Sherwood Aff. ¶ 7; *see also* Young Aff. ¶ 9; Ex. 8.) Defendants' attempted to deposit the $538.99 check caused Plaintiff to incur an insufficient funds charge of $31.00. (Compl. ¶ 32.)

Based on his belief that Defendant was not entitled to collect interest on the Debt, Plaintiff asserts that the remaining balance of the Debt in June 2012—after Defendant deposited the January, February, and March 2012 checks—was $486.00. (Compl. ¶¶ 29, 34.) However, in June 2012, Defendant reported the past due balance of the Debt as $544 to Experian. (Sherwood Aff. ¶ 9; Mot. Summ. J., Ex. E.)

**PROCEDURAL HISTORY**

Plaintiff's Complaint was filed on October 19, 2014 and asserts six claims for relief. (*See* Compl.) Plaintiff first four claims allege that Defendant's actions violated various provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. Plaintiff's fifth and

sixth claims assert that Defendant's actions violated the Electronic Fund Transfers Act (ETFA), 15 U.S.C. § 1693 *et seq.,* and 12 C.F.R. § 1005.3(b)(2) ("Regulation E").[1]

Defendant's Motion for Summary Judgment was filed on September 16, 2013. (*See* Mot. Summ. J.) Plaintiff's Response was filed on October 21, 2013 (*see* Resp.) and Defendant's Reply was filed on November 5, 2013 (*see* Doc. No. 38 [Reply].) Accordingly, this matter is ripe for the court's review and recommendation.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.

---

[1] Regulation E was issued by the Bureau of Consumer Financial Protection pursuant to the EFTA to carry out the purposes of the EFTA. 12 C.F.R. § 1005.1.

*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

*A.     EFTA Claims*

Plaintiff's fifth claim for relief alleges that "Defendant violated § 1693e(a) of the EFTA by initiating electronic fund transfers from Plaintiff's checking account" without Plaintiff's written authorization, and without sending Plaintiff a copy of such authorization, in violation of § 1693e(a). (Compl. ¶ 45.) Similarly, Plaintiff's sixth claim for relief alleges that Defendant violated § 1693m(a) of the EFTA and § 1005.3(b)(2) of Regulation E, "by initiating at least one one-time electronic fund transfer without Plaintiff's authorization and without notice to Plaintiff that the transfer would be made as an electronic fund transfer." (Compl. ¶ 47.) It appears that

each of these claims is premised on Defendant's allegedly unauthorized withdrawal of $538.99 in April 2012. (Resp. at 9-10.)

Section 1963e(a) of the EFTA provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a); *see also* § 1693m(a) (providing a private cause of action against "any person who fails to comply with any provision" of the EFTA). Defendant argues that the EFTA does not apply to the April 2012 withdrawal because it was originated by a check or paper draft, and not an electronic fund transfer. The court agrees.

The EFTA defines "electronic fund transfers" as follows:

> the term "electronic fund transfer" means any transfer of funds, *other than a transaction originated by check, draft, or similar paper instrument*, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. § 1693a(7) (emphasis added). Further, Regulation E effectively states that the definition of an "electronic fund transfer" includes using "a check, draft, or similar paper instrument . . . as a source of information to initiate a one-time electronic fund transfer from a consumer's account." *See* 12 C.F.R. 1005.3.

At least one court has found, on facts nearly identical to those presented here, that the EFTA does not apply to a transaction initiated by a check. *Vigneri v. U.S. Bank Nat'l Ass'n,* 437 F. Supp. 2d 1063, 1065-66 (D. Neb. 2006). In *Vigneri,* the plaintiffs sued their bank, U.S. Bank,

for violations of the EFTA, based on a purportedly unauthorized withdrawal by a debt collection agency, Nationwide Credit Inc. The plaintiffs authorized Nationwide to withdraw $100 per month from their U.S. Bank checking account to satisfy an outstanding debt. *Id.* at 1065. However, Nationwide later withdrew $1074.88 from the U.S. Bank account, allegedly without the plaintiffs' authorization. *Id.* As to each withdrawal, Nationwide documented the debit in question with a paper draft containing the routing and account number for the plaintiffs' checking account. *Id.* In the signature line of that draft, "Nationwide Credit, Inc." had been typed, immediately followed by language stating "By Nationwide Credit, Inc. as authorized signatory for [the plaintiff]." *Id.*

In discussing § 1693a(7)'s express exclusion of "transactions originated by check," the *Vigneri* court noted that "[t]here is an essential difference between electronic fund transfer systems and personal transfers by phone or by check." *Id.* (citing *Kashanchi v. Tex. Commerce Med. Bank,* 703 F.2d 936, 940 (5th Cir. 1983)). As explained in *Kashanchi,*

> [w]hen someone makes an unauthorized use of an electronic fund transfer system, the financial institution often has no way of knowing that the transfer is unauthorized. For example, in order to make a transfer at an automatic teller machine, a person need only possess the machine card and know the correct personal identification number. The computer cannot determine whether the person who has inserted the card and typed in the magic number is authorized to use the system.

*Id.* (quoting *Kashanchi,* 703 F.2d at 941-942). *See also* H.R. Rep. No. 1315, 95th Cong., 2d Sess. 2, 4 (1978) *accord Vigneri,* 437 F. Supp. 2d at 1066 (Congress passed the EFTA due to concerns over the "[t]he dependency of electronic fund transfer systems on computers and the resulting absence of any human contact with the transfer[,] . . . as well

as the lack of a written record.") Thus, impersonal transactions, such as electronic fund transfers, "are much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment methods." *Vigneri,* 437 F. Supp. 2d at 1066.

The *Vigneri* court concluded that the EFTA did not apply to the allegedly unauthorized withdrawal from the plaintiffs' account. *Id.* at 1067-68. The plaintiffs did not present any evidence to support their belief that the withdrawal was an electronic fund transfer. *Id.* at 1068. And, to the contrary, the evidence submitted by U.S. Bank established that "a paper draft initiated the transaction on the plaintiff's checking account, thereby providing a written record of the withdrawals and necessitating human contact in order for those withdrawals to be processed." *Id.* The *Vigneri* court concluded that "[s]uch an ordinary transfer, by definition, does not pose a serious threat to the consumer nor warrant the coverage of the Electronic Funds Transfer Act." *Id.*

Plaintiff argues that *Vigneri* is distinguishable because it only addressed whether a *bank* presented with a paper check can be held liable under the EFTA, and not whether a *debt collector* who drafts checks based on information provided to them by a consumer is covered by the EFTA. This argument is easily rejected. Whether a transaction is covered under the EFTA does not hinge upon the status of the defendant as a bank or a debt collector. Instead, under EFTA's plain language, a transaction is covered if it falls within the definition of an "electronic fund transfer," and is not covered if it was "originated by a check, draft, or similar paper instrument." 15 U.S.C. § 1693a(7).

Plaintiff also argues that, under Regulation E, the April 2012 transaction

constituted an electronic fund transfer because Defendant actually used Plaintiff's checking account information as a source of information to initiate a one-time electronic fund transfer. However, Plaintiff has not submitted any facts or evidence to support this position. In fact, to the contrary, Plaintiff admits that Defendant "generated a paper check for each of the payments made." (Resp. at 4, ¶ 6.)

Furthermore, Defendant has set forth ample evidence establishing that the April 2012 withdrawal from Plaintiff's account was originated by check or paper draft. Defendant has presented photocopies of the checks for each withdrawal from Plaintiff's account, including the April 2012 withdrawal. (Young Aff., Ex. 2, 4, 6, & 8.) Those checks, which were generated by Defendant, feature Plaintiff's name and address, state that they are to be paid to "The Advantage Group," and are signed "Auth by Depositor." (*Id.*) In addition, each check contains routing information for Plaintiff's checking account. (*See id.*) [2]

Tricia Young, a Client Liaison and Administrative Assistant who was responsible for processing payments on Plaintiff's account, has also averred that each of the paper

---

[2] Notwithstanding the fact that the *Vigneri* court relied, at least in part, on the inclusion of the routing and account numbers on the check at issue in that case, *Vigneri,* 437 F. Supp. 2d at 1065, Defendant has redacted all but one digit from the routing number and one digit from the account number from the checks here. In fact, the court nearly overlooked this important information because (1) the redactions were "whited-out" rather than "blacked-out," and (2) neither party made note of these redactions in their briefing. While the court appreciates the need to protect Plaintiff's financial account information, at a minimum, Defendant should have brought these redactions to the court's attention. Further, Defendant likely could have left larger portions of the routing and account numbers unredacted to make it much more clear to the court that the checks contained this information. Nevertheless, it is clear enough to the court that the checks at issue each contained routing and account numbers.

checks generated by Defendant "were negotiated by written endorsement on the back by BRT and deposit [sic] with BRT's bank for payment in the ordinary course by the Plaintiff's credit union." (*Id.* ¶ 10.) The actual checks support Ms. Young's testimony as the back of each check features a negotiation typically associated with a check. (*Id.,* Ex. 2, 4, 6, & 8.)

Similar to the evidence submitted in *Vigneri,* the court finds that Defendant's evidence supports the conclusion that the April 2012 withdrawal from Plaintiff's account originated with a check or paper draft. *Vigneri,* 437 F. Supp. at 1068. Plaintiff has not submitted any evidence to rebut this conclusion. Accordingly, the court finds there is no genuine dispute that the April 2012 withdrawal was originated by a check or paper draft, rather than by an electronic fund transfer. Because the EFTA explicitly excludes "transaction[s] originated by check, draft, or similar paper instrument," 15 U.S.C. § 1693a(7), the court finds that the April 2012 withdrawal of $538.99 from Plaintiff's account falls outside of the scope of the EFTA's coverage. Accordingly, the court finds that Defendant is entitled to summary judgment on Plaintiff's fifth and sixth claims for relief.

### B.   *FDCPA Claims*

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The

Act provides a civil cause of action against any debt collector who fails to comply with its requirements. *See* 15 U.S.C. § 1692k(a). In addition, the FDCPA does not typically require a plaintiff to prove that a debt collector acted intentionally when it violated the act and, as a result, it is often described by courts as a strict liability statute. *Johnson v. Riddle*, 305 F.3d 1107, 1122 n. 15 (10th Cir. 2002) (listing cases); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).

While the FDCPA forbids a variety of conduct:

> The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." § 1692f.

*Riddle*, 305 F.3d at 1117.

In his Complaint, Plaintiff alleges that Defendant violated 15 U.S.C. §§ 1692e(2)(A), 1692e(8), 1692e(10), and 1692f through its attempts to collect the Debt. To establish a violation of the FDCPA, Plaintiff must show that (1) he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3); (2) the Debt arises out of a transaction entered into primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(6); (3) Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6); and Defendant, through its acts or omissions, violated a provision of the FDCPA. There is no dispute that Plaintiff is a consumer, the Debt qualifies as a debt under the FDCPA, and Defendant is a debt collector under the FDCPA. (*See* Mot. Summ. J. at 2, ¶ 1.) Thus, to prevail, Plaintiff need only show that Defendant violated a provision of the

11

FDCPA.

### *1.     Least Sophisticated Consumer Standard*

When deciding claims brought pursuant to § 1692e and § 1692f of the FDCPA, courts have used a "least sophisticated consumer" standard to determine whether a debt collector's representations were false, deceptive, misleading, unfair, or unconscionable. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (listing cases). The least sophisticated consumer standard ensures protection to all "consumers, even the naive and the trusting, against deceptive debt collection practices, and . . . protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320. At least five courts of appeal have applied the least sophisticated standard to alleged violations of § 1692e and § 1692f. *See, e.g., LeBlanc*, 601 F.3d at 1194; *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1002 (3d Cir. 2011); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 612 (6th Cir. 2009); *Donohue v. Quick Collect*, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010); *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 774 (7th Cir. 2007) (using the "unsophisticated consumer" standard).

The Tenth Circuit has not expressly adopted this standard, but it has, in an unpublished opinion, "applied an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector." *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (internal quotation marks omitted). Accordingly, because the FDCPA is a remedial statute that "should be construed liberally in favor of the consumer," *Riddle*, 305 F.3d at 1117, the court will apply the least sophisticated

consumer st401ndard to Plaintiff's §§ 1692e and 1692f claims.

### 2.     *Section 1692f*

Plaintiff's fourth claim for relief alleges that Defendant violated Section 1692f of the FDCPA.  Section 1692f(1) prohibits "'unfair or unconscionable means to collect or attempt to collect any debt[, consisting of t]he collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Maynard v. Cannon,* 401 F. App'x 389, 397-98 (10th Cir. 2010) (quoting 15 U.S.C. § 1692f(1)).  Plaintiff alleges that Defendant violated § 1692f in two ways:  (1) by withdrawing $538.99 from Plaintiff's checking account in April 2012, and (2) by collecting eight percent interest on the Debt.

#### a.     *Unauthorized Withdrawal*

As discussed, Plaintiff alleges that Defendant violated § 1692f in April 2012, when it attempted to withdraw $538.99 from his checking account, despite the fact Plaintiff authorized Defendant to withdraw only $25.00.  Several decisions have held that making unauthorized withdrawals from a consumer's bank account violates the FDCPA, with at least one decision specifically concluding that such conduct amounts to a violation of § 1692f. *Torres v. Nat'l Enter. Sys., Inc.,* No. 12C2267, 2013 WL 870624, at *2-3 (N.D. Ill. March 7, 2013) (finding that allegations that the defendant withdrew $2,2945.53 when the plaintiff allegedly authorized a withdrawal of only $400 was sufficient to state a claim under §1692f); *Pearce v. Ethical Asset Mgmt., Inc.,* No. 07-cv-718S, 2010 WL 932597, at *4 (W.D.N.Y Mar. 11, 2010) (finding, for purposes of default judgment, that unauthorized withdrawals from the plaintiff's bank account

13

violated the FDCPA); *Anderson v. Didonato,* No. 1:12-cv-00643 (TSE/TRJ), 2012 WL 6553675, at *4 (E.D. Va. Nov. 19, 2012) *recommendation adopted at* 2012 WL 6561259 (Dec. 14, 2012) (granting damages on claims for violations of the FDCPA, including a claim based on unauthorized withdrawals from the plaintiff's bank account).

In light of this authority, Defendant concedes in its reply that summary judgment is likely not appropriate on this aspect of Plaintiff's 1692f claim. (Reply at 8.) Defendant is correct. While Defendant has submitted evidence suggesting that Plaintiff agreed to make three $25.00 monthly payments in January, February, and March 2012 and pay the remaining balance of the Debt in April 2012 (Trujillo Aff. ¶ 3), Plaintiff has averred that he never authorized Defendant to issue a check on his account in excess of $25.00, and did not authorize Defendant to withdraw the remaining balance of the Debt in April 2012 (Sherwood Aff. ¶¶ 4-6). In light of this genuine and material dispute as to the amount Defendant was authorized to withdraw in April 2012, the court finds that summary judgment is not appropriate on this aspect of Plaintiff's § 1692f claim.

### b.     *Collection of Interest*

Plaintiff also alleges that Defendant violated § 1692f by collecting eight percent interest on the Debt. Defendant maintains this aspect of Plaintiff's § 1692f claim fails because it was permitted by law to charge eight percent interest on the Debt, pursuant to Colo. Rev. Stat § 5-12-102. In his Response, Plaintiff argues that Defendant has not conclusively demonstrated that it was permitted by law to collect eight percent statutory interest because it has failed to show that the original agreement creating the Debt between Plaintiff and Littleton did not provide for a different interest rate. The court agrees with Plaintiff.

14

To evaluate whether Defendant's collection attempt was permitted by law, the court must determine whether state substantive law permitted Defendant to apply the eight percent interest rate to Plaintiff's account. *Nikkel v. Wakefield & Assocs., Inc.,* No. 10-cv-02411-PAB-CBS, 2012 WL 5571058, at *14 (Nov. 16, 2012) (citing *Johnson v. Riddle,* 305 F.3d 1107, 1118 (10th Cir. 2002)). Colo. Rev. Stat. 5-12-102(2) provides

> When there is no agreement as to the rate thereof, creditors shall be allowed to receive interest at the rate of eight percent per annum compounded annually for all moneys after they become due on any bill, bond, promissory note, or other instrument of writing, or money due on mutual settlement of accounts from the date of such settlement and on money due on account from the date when the same became due.

"Thus, the issue here is whether the debt obligation between [Plaintiff] and [Defendant] provided an interest rate other than eight percent." *Nikkel,* No. 10-cv-02411-PAB-CBS, 2012 WL 5571058, at *14 (citing *Riddle,* 305 F.3d at 1118).

Because Defendant has not presented the "agreement creating the debt," the court is unable to determine whether an interest rate other than the statutory rate of eight percent is applicable. *Id.* Contrary to Defendant's argument (Reply at 5), it is not Plaintiff's burden to produce the agreement at this juncture. Instead, because Defendant has moved for summary judgment, it bears the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, there remains a genuine issue of fact as to whether the agreement between Plaintiff and Littleton included an interest rate other than eight percent. And that factual issue precludes a judicial determination at this juncture that Defendant's collection of eight percent interest on the Debt was "permitted by

law." § 1692f(1).[3]

Altogether, the court finds that Defendant is not entitled to summary judgment on Plaintiff's § 1692f claim. Therefore, Defendant's Motion for Summary Judgment is properly denied with respect to claim four.

### 3.   *Sections 1692e(2)(A) & 1692e(10)*

Plaintiff's first and third claims for relief allege that Defendant violated of Section 1692e(2)(A) and 1692e(10), respectively. Section 1692e reads, in relevant part: "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Subparts (2)(A) and (10) provide, respectively, that "[t]he false representation of [] the character, amount, or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" constitute violations of Section 1692e. 15 U.S.C. § 1692e(2)(A), (10).

Plaintiff claims that Defendant misrepresented the amount owed on the Debt by demanding payment of accrued interest not expressly authorized by his obligation to Littleton. If the interest rate provided for by agreement between Plaintiff and Littleton specifies an interest rate that it not eight percent, then Defendant's December 8, 2011 initial correspondence stating that interest was owed on the Debt falsely represented the amount that Defendant could lawfully

---

[3] Plaintiff also argues that even if Defendant was authorized to collect interest, Littleton waived that right for itself and Defendant by failing to collect interest for over a year. (Resp. at 14-15.) The court finds that this issue cannot be resolved prior to resolution of the factual dispute over whether the agreement creating the Debt authorized an interest rate other than eight percent. Indeed, the court finds it likely that analysis of this waiver issue will hinge on a determination whether Defendants' right to collect interest, if any, is statutory or contractual.

collect, in violation of § 1692e(2)(A) & (10). *Nikkel,* 2012 WL 5571058, at *15 (citing *Ditty v. CheckRite, Ltd.,* 973 F. Supp. 1320 (D. Utah 1997); *Terech v. First Resolution Mgmt. Corp.,* 854 F. Supp. 2d 537, 544 (N.D. Ill. 2012)). As already discussed, neither party has submitted, or otherwise averred to, the agreement between Plaintiff and Littleton. Accordingly, as with Plaintiff's § 1692f claim, the court finds that there are genuine issues of fact that preclude the entry of summary judgment on Plaintiff's §§ 1692e(2)(A) and e(10) claims. Therefore, Defendant's Motion for Summary Judgment is properly denied as to Claims One and Three.

### *4.   1692e(8)*

Plaintiff's second claim alleges that Defendant violated Section 1692e(8) of the FDCPA. Section 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false." Plaintiff alleges that Defendant violated Section 1692e(8) by communicating to Experian in June 2012 that the outstanding balance of the Debt was $544.00, instead of $486.00.

Again, the crux issue with respect to this claim is whether Defendant was entitled to charge eight percent interest on the Debt. The parties appear to agree that, if Defendant was permitted to charge interest, the outstanding balance of the Debt was indeed $544.00 and Defendant did not communicate any false credit information. However, if the agreement between Plaintiff and Littleton provided for a different interest rate, then Defendant likely reported credit information to Experian that it knew or should have known was false.

As discussed with respect to Plaintiff's first, third, and fourth claims, because

17

neither party has attached, or otherwise averred to, the terms of the initial agreement between Plaintiff and Littleton, there is a genuine issue of fact as to whether Defendant was entitled to charge eight percent statutory interest on the Debt, pursuant to Colo. Rev. Stat § 5-12-102. Because that factual issue must be resolved prior to determining whether Defendant knew or should have known that it falsely reported to Experian that the balance of the Debt was $544.00, Defendant is not entitled to summary judgment on Plaintiff's § 1692e(8) claim. Accordingly, the court finds that Defendant's Motion for Summary Judgment is properly denied with respect to Plaintiff's second claim for relief.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that "Defendant's Motion for Summary Judgment" (Doc. No. 27) be GRANTED in part and DENIED in part. Specifically, I recommend that Defendant's Motion for Summary Judgment be GRANTED with respect to Plaintiff's fifth and sixth claims for violations of the EFTA and DENIED as to Plaintiff's first, second, third, and fourth claims for violations of the FDCPA.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 8th day of July, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge