**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.: 1:12-cv-02782-RM-KMT

Kenneth Sherwood,

    Plaintiff

v.

BRT Corporation, d/b/a The Advantage Group,
d/b/a Professional Affiliates Company,

    Defendant

_____

**MOTION FOR PARTIAL RECONSIDERATION OF**
**MAGISTRATE REPORT AND RECOMMENDATION**
_____

Plaintiff Kenneth Sherwood ("Plaintiff") moves for partial reconsideration of the Magistrate's Report and Recommendation ("the Report") under Fed. R. Civ. P. 60 as it pertains to prejudgment interest and the FDCPA. Plaintiff respectfully states as follows:

## I.    Relevant Background

Plaintiff alleges that BRT Corporation ("BRT") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* ("FDCPA"), at §§ 1692e(2)(A), 1692e(8), 1692e(10), and 1692f, while it was collecting a debt on behalf of the City of Littleton ("the City"). Doc. 1, ¶¶ 36-43. The alleged debt arose from an emergency ambulance trip from his residence to Littleton Adventist Hospital after he was discovered unconscious by a family member. *See* Affidavit of Kenneth Sherwood, attached as Exhibit "A." The alleged violations stem from (1) BRT's unauthorized draw on his

1

checking account in an amount of $538.99, and (2) BRT's unlawful collection of 8% interest prior to any judgment being entered.

The Magistrate recently filed a report and recommendation with respect to BRT's motion for summary judgment. Doc. 48. With respect to the second issue, prejudgment interest, BRT had argued it was entitled to charge prejudgment interest under Colo. Rev. Stat. 5-12-102 ("Section 102"). Plaintiff argued that BRT "failed to show that the original agreement creating the Debt between Plaintiff and [the City] did not provide for a different interest rate." Doc. 48 at 14. The Court agreed with Plaintiff, relying on *Nikkel v. Wakefield & Assocs., Inc.,* No. 10-cv-02411-PAB-CBS, 2012 WL 5571058 (Nov. 16, 2012). Doc. 48 at 15. However, *Nikkel* analyzed the question under Colo. Rev. Stat. 5-12-101 ("Section 101").

Plaintiff also argued that, even if adding interest were permissible, the City waived any right by not assessing it for nearly a year. *Id.* at 16, fn. 3. With respect to the waiver argument, the Report stated:

> The court finds that this issue cannot be resolved prior to resolution of the factual dispute over whether the agreement creating the Debt authorized an interest rate other than eight percent. Indeed, the court finds it likely that analysis of this waiver issue will hinge on a determination whether Defendants' right to collect interest, if any, is statutory or contractual.

*Id.*

No contract ever existed, however, because Plaintiff never entered into any agreement for emergency services. For the reasons that follow, Plaintiff contends that the Court should reconsider its ruling and find Plaintiff is entitled to summary judgment in light of this development.

## II. Standard of Review

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Rule 60(b)(6) "outlines a related standard of review and lists six bases on which a party may seek relief from an order or final judgment." *Blackman v. Torres*, No. 11-CV-02066-REB-BNB, 2014 WL 976934, *2 (D. Colo. 2014). This includes "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "The Tenth Circuit has described Rule 60(b)(6) as a 'grand reservoir of equitable power to do justice in a particular case.' " *Robledo-Valdez v. Smelser*, No. 12-CV-01833-WYD-KLM, 2014 WL 1757931, *3 (D. Colo. 2014) (citing *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996)).

## III. Legal Analysis

Now that it is clear there was no agreement creating the debt, Plaintiff moves for reconsideration and asks for summary judgment for two reasons.

As an initial matter, the Report framed the issue as whether BRT was entitled to charge interest under Section 102. Doc. 48 at 18. However, *Nikkel* held that Section 102 was inapplicable to whether debt collectors have a right to seek interest prior to a judgment being entered. Rather, Section 101 is the applicable statute under which the Court should analyze the present question.

Plaintiff is entitled to summary judgment on his FDCPA claims, because BRT did not have the right to collect interest under Section 101. That statute only pertains to

"interest on money," and there was no "money" involved in the transaction between the City and Plaintiff. There is no other basis for asserting a right to interest.

Next, if the foregoing issue is not determinative, Plaintiff argues that whether the City waived its right to assess interest is now ripe. Even if Section 101 allowed the City to add interest pre-litigation—it did not—the City waived this right, and Plaintiff is entitled to summary judgment.

> **A. BRT is not entitled to interest under Section 101, because it only allows for "interest on money." Plaintiff neither received money or credit, nor did he agree to pay any money.**

The Court analyzed the statutory interest issue under Section 102, when it should be analyzed under Section 101. *See Nikkel*, 2012 WL 5571058 at \*14. Because the City is not entitled to statutory interest under Section 101 and Section 102 is inapplicable, Plaintiff is entitled to summary judgment under the FDCPA.

> **1. The relevant statutory provision is Section 101.**

Section 101 creates an entitlement to "interest on money" by stating, "[i]f there is no agreement or provision of law for a different rate, the interest on money shall be at the rate of eight percent per annum, compounded annually." Colo. Rev. Stat. § 5–12–101. Section 102, on the other hand, only applies to prejudgment interest to be assessed by the court when entering a judgment. *Nikkel*, 2012 WL 5571058 at \*14. It does not provide any substantive right before the creditor has obtained a judgment. *Id*. As it is undisputed that no judgment had been obtained here, the relevant provision is Section 101. *Id*.

In *Nikkel*, the Court analyzed a very similar case, where a debt collector added 8% to medical bills "stemm[ing] from in-patient treatment her son received at Children's

4

[Hospital]." *Id*. at *1. In determining whether summary judgment was appropriate on the propriety of seeking that interest, the Court evaluated Section 101, Section 102, and Colo. Rev. Stat. § 5–12–103 ("Section 103").[1] The Court ultimately held that without showing that the agreement creating the debt did not provide for a different interest rate, the defendant was not entitled to summary judgment. 2012 WL 5571058 at *14.

The Report adopted *Nikkel*'s reasoning regarding the propriety of summary judgment. However, *Nikkel* clearly stated that Section 102 was not the applicable statute, explaining:

> [C]reditors recovering prejudgment interest after a judgment has entered in a case do so pursuant to Colo. Rev. Stat. § 5–12–102. Here, it is undisputed that, on April 22, 2010, Wakefield had not yet secured a judgment on the Children's account and *therefore Colo.Rev.Stat. § 5–12–102 is inapplicable*.

*Id*. (emphasis added).

Likewise, Section 102 is not the applicable statute here, because it is undisputed that BRT was seeking interest before it had obtained a judgment. Thus, in the absence of an agreement, any right to interest must come from Section 101.

The *Nikkel* court's conclusion about Colorado law is bolstered by the structure of Colorado's interest statutes. Section 101 states, "If there is no agreement or provision of law for a different rate…the interest on money *shall be* at the rate of..." Colo. Rev. Stat. 5-12-101 (emphasis added). This creates a right in the abstract; no judgment or court proceeding is required.

---

[1] Section 103 governs what higher rates may be agreed to by contracting parties and is not applicable here, as there was no agreement.

Section 102, by contrast, uses language in terms of how a creditor's right to prejudgment interest is to be treated by the courts. Subsection (1) states "creditors *shall receive* interest as follows…" and subsection (2) states that "creditors *shall be allowed to receive* interest." Colo. Rev. Stat. 5-12-102 (emphasis added). And, subsection (1) contains an exception, which refers to "*actions* brought to recover damages for personal injuries." Colo. Rev. Stat. 13-21-101 (emphasis added). Finally, subsection (4) deals with post-judgment interest, strongly indicating that subsections (1) through (3) pertain to prejudgment interest and do not create a right in the abstract to interest.

There is almost no case law about Section 101, as most cases discussing interest pre-litigation do so in the context of a filed lawsuit and, hence, discuss Section 102. But, where the issue is the entitlement to interest in the absence of a judgment, the relevant provision is Section 101, as *Nikkel* explains.

> **2. BRT was not entitled to collect or represent that Plaintiff's debt was accruing at 8% interest under Section 101, because that only entitles a creditor to "interest on money."**

Section 101 did not entitle BRT to collect interest. "The right to interest, independent of an agreement to pay it, is statutory." *I.M.A., Inc. v. Rocky Mt. Airways, Inc.*, 713 P.2d 882, 893 (Colo. 1986) (quoting *Weaver v. First National Bank of Limon*, 138 Colo. 83, 96, 330 P.2d 142, 149 (1958)). And Section 101 only entitles a creditor to "interest on money." Colo. Rev. Stat. 5-12-101.

By its plain terms, for Section 101 to apply to a given transaction, there must be "money" involved. There was no money involved here. Plaintiff didn't receive any money. There was no loan or extension of credit. Plaintiff did not even *promise* to pay

6

any money, as the plaintiff arguably did in *Nikkel*, at least impliedly, by bringing her child to the Children's Hospital for in-patient treatment. 2012 WL 5571058 at *1. Plaintiff, on the other hand, was unconscious when the ambulance was called and could not have entered into an agreement to pay money, expressly or impliedly. So even construing the statute broadly and finding it applicable to agreements to *pay* money for goods or services—as opposed to transactions that deal directly with lending or credit—it would still not be applicable here.

Had the City sought to obtain a judgment against him, it would have needed to bring an action based on a theory of unjust enrichment, since there was no contract formed, express or implied. *See Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000) (unjust enrichment "does not require any promise or privity between the parties. Rather, it is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another"). The fact that the City sent a bill is irrelevant to the nature of the transaction. In an unjust enrichment action, the court will not simply impose whatever amount the creditor has decided to bill, but will affect restitution by ordering the recipient of the benefit to pay "the monetary equivalent" of that received. *Id*.

While a court could ultimately order restitution against Plaintiff by determining "the monetary equivalent," *id*., of the ambulance trip and assess prejudgment interest in a court judgment based on Section 102, the City had no right under Section 101 to "interest on money" before obtaining a judgment, because there was never any money involved. Therefore, Plaintiff is entitled to summary judgment.

## B. The waiver issue is now ripe.

The Court previously stated that the "waiver issue will hinge on a determination whether Defendants' right to collect interest, if any, is statutory or contractual." Doc. 48 at 16. It is now clear that any right to interest must be statutory.

"Waiver is the intentional relinquishment of a known right or privilege." *NationsBank of Georgia v. Conifer Asset Mgt. Ltd.*, 928 P.2d 760, 763 (Colo. App. 1996). "In general, both substantive and procedural statutory rights may be waived so long as the waiver is voluntary." *First Interstate Bank of Denver, N.A. v. C. Bank & Trust Co. of Denver*, 937 P.2d 855, 861 (Colo. App. 1996). "Waiver may be explicit, or it may be implied by a party's conduct if the conduct is unambiguous and clearly manifests an intention not to assert the right or if it is inconsistent with assertion of the right." *NationsBank of Georgia*, 928 P.2d at 763. "Waiver may be determined as a matter of law only when the material facts are not in dispute, otherwise, waiver is a factual determination for the trial court." *Id*.

### 1. The City voluntarily sent letters indicating it was not adding interest to Plaintiff's debt. Allowing its debt collector to exercise any right under Section 101 is unfair.

The material facts are not in dispute. The City sent billing statements without adding interest to Plaintiff's account for a period of several months. It did so voluntarily. Being a governmental entity—as opposed to, for example, a criminal suspect—it is certainly charged with knowledge of what rights it had. Not adding interest to the balance is completely inconsistent with the conduct of someone seeking to take

8

advantage of Colorado's *de facto* interest rate. By choosing not to add interest, the City waived its right to do so, and BRT could not assert any right that the City had waived.

Of course, any right under Section 102 to obtain prejudgment interest pursuant to a judgment was not waived, because such a right need not—and may not—be asserted until one files suit. But to the extent that the City was permitted to add interest to Plaintiff's account balance under Section 101, it intentionally did not.

### 2. Even if the City did not waive its future right to add interest to the account prior to filing suit under Section 101, it unquestionably waived its right to do so for past interest.

At the very least, the City waived the right to any interest through the date of its last billing statement. The City had previously mailed Plaintiff a statement saying that his account would be fully paid in exchange for $561.00. *See* September 29, 2011 letter, attached hereto as Exhibit "C". But on December 7, 2011, the day it received the debt, BRT did not simply begin to add interest moving forward in time. *See* Account Notes, attached as Exhibit "B." Instead, BRT added $48.69 to Plaintiff's debt, backdating interest to November 6, 2010, the day services were rendered. *Id*. While one could argue that the City retained its right to add interest moving forward, because it hadn't yet sent statements showing no interest had been added, it unquestionably waived its right to interest that it should have assessed in previous billing statements.

Interestingly, BRT only added interest based on the remaining balance of $561.00. So BRT was apparently aware the City had waived some right to interest. Otherwise, it should have added the interest which was purportedly accruing on the portion of the debt that Plaintiff had already paid off. This demonstrates that BRT understood the City's

9

failure to previously assert a right to interest on a portion of the amount meant it could not seek it after the fact.

## IV.   Conclusion

There was no contract relationship between the City and Plaintiff, because he was unconscious when he was taken to the hospital.  The City had no judgment against Plaintiff, so the only statute that could have given it a right to interest was Section 101.  This statute only applies to transactions involving money.  The City rendered a service to Plaintiff, and absent any agreement to pay, even the broadest construction of the statute does not provide the City with a right to add interest to the debt.  Indeed, for several months, it did not.  While the City would still be entitled to prejudgment interest from a court if it decided to bring suit, it voluntarily waived its right to add interest to the account before then by sending bills showing the amount was remaining the same.

Thus, BRT collected interest it had no legal right to collect.  It misrepresented the amount of the debt to Plaintiff and the credit reporting agencies.  It is therefore liable to Plaintiff under the FDCPA for violating §§ 1692e(2)(A), 1692e(8), 1692e(10), and 1692f.

Dated: August 14, 2014   Respectfully submitted,

/s/David McDevitt
David McDevitt
Weisberg & Meyers, LLC
5025 N. Central Ave., #602
Phoenix, AZ 85012
Telephone: (602) 845-5969
Facsimile: (866) 565 1327
dmcdevitt@AttorneysForConsumers.com

**CERTIFICATE OF SERVICE**

I certify that on August 14, 2014, I filed the foregoing with the Court, using CM/ECF, which will send notification of such filing to:

Thomas C. Volkmann
Spiecker, Hanlon, Gormey & Volkmann, LLP
620 Alpine Bank Building
225 North 5th Street
Grand Junction CO 81502
tom@shgvlaw.com

                                            /s/ David McDevitt
                                            David McDevitt